**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY M. PERIUS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07 C 1251 |
| | ) | |
| ABBOTT LABORATORIES, | ) | Hon. Judge David H. Coar |
| | ) | |
| | ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. | ) | |

**ABBOTT'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR A PROTECTIVE ORDER**

Through sweeping and improper discovery, Plaintiff is attempting to unnecessarily expand the scope of this lawsuit. Plaintiff is a private litigant with very personal claims in what should be a relatively straight-forward employment case. Nonetheless, he has issued massively-overbroad discovery and has demanded, via subpoena, numerous depositions regarding the marketing and sales practices of Kos Pharmaceuticals, Inc. ("Kos"), its related compliance efforts and the Department of Justice's ("DOJ") investigations into such practices and compliance efforts (collectively referred to as "compliance and government investigation materials"). Through this discovery, Plaintiff is deliberately intruding on an ongoing government investigation concerning alleged regulatory violations.

## I. INTRODUCTION

The compliance and government investigation materials demanded by Plaintiff are, of course, irrelevant to any claim or defense in this lawsuit, which alleges that Kos violated federal and state whistleblower laws, breached stock incentive plans, and violated the Illinois Wage Payment and Collection Act. But more than the obvious irrelevance, Plaintiff's discovery is being used for a vexatious and improper purpose – to put this case at odds with government investigations of Kos. Plaintiff's improper purposes are particularly revealed by his insistence that the protective order in this case include a specific carve-out allowing Plaintiff to turn over any and all documents received in discovery to the government. Ultimately, Plaintiff's discovery requests constitute an abuse of the discovery system.

This case is not about whether or not Kos's marketing and sales practices were compliant with applicable laws and regulations, but this is exactly what Plaintiff's discovery is attempting to uncover. In fact, Plaintiff has demanded and continues to demand virtually any document ever produced at Kos and/or created by its attorneys. Plaintiff has also demanded every single document Kos has produced to the government in connection with its investigations. Plaintiff seeks a great deal of information wholly unrelated to his employment with Kos, or termination thereof, and entirely distinct from any alleged protected activity. To Abbott's knowledge, Plaintiff is neither a *qui tam* complainant nor a relator to the government's investigation. Thus, there is no reason for Plaintiff to be seeking underlying compliance-related materials, except to harass Abbott by attempting to put at issue "sensitive" matters that Plaintiff knows to be subject to government investigations.

Indeed, Plaintiff's requests seeking underlying compliance and government investigation materials will create a "trial within a trial" where the immense scope and breadth of the government's investigations (irrelevant as to any claim or defense in this litigation) will engulf the real issues in the case. Plaintiff wants to turn this case into a trial about whether Kos's marketing and sales practices were compliant with applicable laws. This is unnecessary and improper. Plaintiff's discovery, including the depositions of witnesses regarding underlying compliance and government investigation issues, may interfere with the DOJ's investigations and may force witnesses into the untenable position of invoking their Fifth Amendment right against self-incrimination if questioned about issues subject to the government's investigation. Such discovery will undoubtedly prejudice Abbott in its defense of the instant case, and it may complicate its ability to cooperate with the government in its investigations of Kos.

Abbott's position is simple. Because Plaintiff refuses to acknowledge the irrelevance of his discovery into compliance and government investigation materials and related issues, and as the parties have been unable to resolve this matter pursuant to L.R. 37.2, Abbott respectfully asks the Court to issue a protective order with respect to these discovery requests and witnesses. Granting this motion will enable the parties and the Court to focus on the issues truly important in this case by eliminating needless discovery, motion practice and related disputes concerning topics wholly irrelevant to Plaintiff's claims.

## II.     ARGUMENT

The Court should grant a protective order limiting Plaintiff's discovery requests and depositions to those issues reasonably related to Plaintiff's claims and Abbott's defenses. This is an employment case. This case is not about whether Kos's marketing and sales activities. Yet, Plaintiff is using discovery in this case as a "fishing expedition" to unnecessarily dig into marketing and sales practices, compliance issues, and related government investigations. In order to keep this case focused on what is truly relevant, to avoid needlessly long and expensive discovery, and to prevent significant prejudice resulting from the simultaneous civil litigation and federal investigation, the Court should limit the discovery and depositions sought by Plaintiff.

From the allegations in his Amended Complaint, Plaintiff is clearly aware that the government is conducting two investigations of certain compliance-related practices of Kos. Indeed, on or around November 9, 2006, Kos filed a disclosure with the United States Securities and Exchange Commission, which acknowledged that "[i]n February 2005, Kos learned that the Office of the Inspector General of the United States Department of Health and Human Services (the 'OIG') in conjunction with the United States Department of Justice, is conducting an investigation of Kos's marketing and sales practices."

Plaintiff is improperly attempting to leverage the ongoing government investigations of Kos against Abbott for purposes of the instant case. Plaintiff's discovery requests inappropriately track the above-referenced investigations. Documents and testimony relating to Kos's compliance with federal marketing and sales laws, its internal investigation as to compliance with these federal requirements, and its cooperation with a federal investigation are not reasonably calculated to lead to the discovery of admissible evidence. As a result, Abbott is entitled to a protective order prohibiting discovery as to underlying sales and marketing issues and related investigations.

### A.     The Court Has the Discretion to Limit Discovery in This Case

The Court's discretion to control discovery by limiting the parties to the use of those devices which "serve a useful purpose" is well settled. *See Olivieri v. Rodriguez*, 122 F.3d 406, 409 (7th Cir. 1997). Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part, that discovery may be obtained "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." While relevancy may be broadly construed, it is not unlimited, *see Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996), and the Federal Rules of Civil

3

Procedure are designed to protect a person from "annoyance, embarrassment, oppression or undue burden or expense" associated with unwarranted and frivolous discovery. Fed. R. Civ. Pro. 26(c). Accordingly, the Seventh Circuit has recognized that "[p]re-trial discovery is time-consuming and expensive; it protracts and complicates litigation; and judges are to be commended rather than criticized for keeping tight reins upon it," *Olivieri*, 122 F.3d at 409 (citations omitted), and that "[d]istrict judges have substantial discretion to make such decisions to curtail the expense and intrusiveness of discovery and trial." *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994).

The party requesting discovery has the burden of showing that the requested discovery is relevant, *see, e.g.*, *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974), and therefore, the burden is on Plaintiff to demonstrate that his discovery is relevant to the claims or defenses in the pending action. Indeed, "[t]he party seeking discovery must be able to 'articulate the possible linkage between the discovery sought and admissible evidence.'" *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 522 (W.D. Tenn. 1999) (citations omitted). Plaintiff cannot carry his burden of demonstrating that underlying compliance and investigation-related discovery is at all relevant to his claims or Abbott's defenses.

> B. **Many of Plaintiff's Document Requests Are Not Relevant to Any Claim or Defense at Issue in This Employment Case**

Plaintiff improperly seeks extensive information, documents and witnesses concerning alleged non-compliance with federal laws regarding marketing and sales practices and related government investigations. There is not a single element of any of Plaintiff's claims requiring a showing that there was *in fact* any underlying illegal activity.

The essential elements of Plaintiff's claims under both the False Claims Act ("FCA") and the Illinois Whistleblower Reward and Protection Act ("IWRPA") are that: (1) Plaintiff was engaged in conduct protected by the statutes, (2) Kos knew he was engaging in such protected conduct, and (3) Kos discriminated against Plaintiff because of this protected conduct. *See Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998) (analyzing an FCA claim); *see also State ex rel. Beeler, Schad & Diamond, P.C. v. Target Corp.*, 367 Ill. App. 3d 860 (Ill. App. Ct. 2006) (extending generally FCA analysis to IWRPA actions because the two statutes are nearly identical, except as to IWRPA's additional requirements to qualify as a "protected activity"). Plaintiff's other claims (breach of stock option plans, duty to indemnify, and violation of the Illinois Wage Payment and Collection Act) are essentially contract claims

4

and require an analysis of Plaintiff's termination of employment. Plaintiff's requests are not reasonably tailored to discovering information relevant to these issues or any of the primary matters at issue in this case.

Indeed, there is no reason for Plaintiff to be seeking underlying compliance or investigation-related materials. *See Byers v. Illinois State Police*, No. 99 C 8105, 2002 WL 1264004, at *2, 6 (N.D. Ill. June 3, 2002) (recognizing general limits on discovery and stating that "requested discovery must relate to the particular claims of the case"). In situations similar to the instant case, federal courts have recognized that information regarding the merits of purported compliance violations underlying a whistleblower action are irrelevant to retaliation claims. *See, e.g., McAllan v. Von Essen*, 517 F. Supp. 2d 672, 677–78 (S.D.N.Y. Sept. 26, 2007). In *McAllan*, a whistleblower lawsuit, the plaintiff sought discovery as to the facts underlying the claims purportedly implicated by the whistleblower claims. There, the Southern District of New York concluded that "whether [the] underlying False Claims Act case had merit or whether plaintiff's comments were true" was "irrelevant" for purposes of determining "whether defendants retaliated against plaintiff because he filed a False Claims Act case and engaged in protected [] activities." *Id.* Thus, in the context of a summary judgment counterstatement, the *McAllan* court denied plaintiff's request for additional discovery: "[b]ecause additional discovery regarding the truth of plaintiff's comments will not uncover any evidence relevant to this action, plaintiff's Rule 56(f) motion is denied." *Id.*

Plaintiff is not, to Abbott's knowledge, a *qui tam* complainant or relator to the government's investigation. Instead, Plaintiff's claims in this lawsuit are of a personal nature, in that he challenges the termination of his employment from Kos. Thus, it is irrelevant to Plaintiff's claims whether Kos's marketing and sales practices were legal or illegal or whether, and to what extent, the government has investigated Kos.

Yet, this is exactly what Plaintiff is seeking in discovery. A copy of Plaintiff's First Request for Documents is attached hereto as **Exhibit A**. A copy of Plaintiff's First Set of Interrogatories is attached hereto as **Exhibit B.** By way of example, Plaintiff has requested documents concerning the following topics:

- Any documents produced by any witness or person during the course of any investigation of Kos or the plaintiff, including (but not limited to) any investigation conducted by, against or involving Holland & Knight. (Plaintiff's First Request for Documents, #4).

- All documents, emails or correspondence relating to sales and marketing practices, rules, guidelines, or policies, that were communicated, followed, required or issued to, from, at, on behalf of or by Kos or defendant, including but not limited to any communications, subpoenas, documents queries, statements, questions or complaints . . . with respect to such practices . . . . (Plaintiff's First Request for Documents, #10).

- Any document which describes or reflects any act or omission regarding or compliance or non-compliance with any practice, policy, requirement or rule of Kos or other entity. . . relating to preceptorships, grants, advisory boards, marketing advisory boards, dine-dashes, doctor dinners, golf, or any gift, goods or services or anything of value . . . . (Plaintiff's First Request for Documents, #17).

- All documents showing, referring to or reflecting all moneys, gifts, goods and services or anything of value that was approved or authorized by and paid or remitted to or by Kos . . . . (Plaintiff's First Request for Documents, #18).

- All documents referring or relating to "quality initiatives," as that term was used at Kos, including but not limited to summer slam, son of slam, 4th and goal, operation acceleration, year end push, etc. (Plaintiff's First Request for Documents, #19).

- All documents reflecting the quantity and quality of all prescriptions written and/or ordered by any Kos provider or user and studies, documents, and analysis of the same. (Plaintiff's First Request for Documents, #20).

- All emails or other documents communicated from or to any person or entity which refer or relate to or concern any managed care presentation. (Plaintiff's First Request for Documents, #58).

- Any documents relating to any investigation of or inquiries, subpoenas, complaints or claims involving or referencing defendant's marketing and/or sales practices conducted by any governmental body, including but not limited to the Department of Justice, the Federal Bureau of Investigation, the Office of the Inspector General . . . . (Plaintiff's First Request for Documents, #65).

- Describe any investigation or inquiry conducted by the company, Holland & Knight, or by any outside or governmental agencies or at the request of any of these parties, relating in *any way* to any investigation of the *company by the Department of Justice*, including the following: (a) the persons who conducted the investigation; (b) the subject matter and/or scope of the investigation, including the events and/or conduct which precipitated it; (c) identify and describe all documents reviewed in connection with the investigation; (d) identify all witnesses interviewed; (e) describe the knowledge and/or facts which each witness disclosed; (f) describe any conclusions, findings or determinations reached by defendant and/or the investigator as a result of the investigation, and the basis for the same; (g) identify all documents reviewed during the investigation, or

6

documents generated in connection with the investigation; (h) describe all occurrences which resulted from the investigation, e.g., terminations, changes in policy, etc. and (i) describe the dates in which the above occurred. (Plaintiff's First Set of Interrogatories, # 12).

● Identify and describe all policies and/or rules which govern or relate to the conduct of sales persons vis a vis their clients, including any prohibitions or limits on preceptorships, grants, advisory boards, marketing advisory boards, dine-dashes, doctor dinners, golf, and other policies and prohibitions relating to goods and services which may be provided to clients, doctors, clients or potential clients. The time period for this request is the entire time for which Kos was in operation. (Plaintiff's First Set of Interrogatories, # 18).

These are just a few examples of the many requests and other discovery seeking information far outside the bounds of this case. The information requested by Plaintiff is not relevant to any issue, claim or defense in this case. More than simply irrelevant, however, these requests would result in an impermissible "trial within a trial" concerning the legality of Kos's marketing and sales practices. *See Gehring*, 43 F.3d at 342; *McCleland v. Montgomery Ward & Co., Inc.*, No. 95 C 23, 1995 WL 571324, at *3 (N.D. Ill. Sept. 25, 1995) (excluding evidence of another employee's harassment complaint where it "would necessitate a 'trial within a trial'"); *see also Sims v. Mulcahy*, 902 F.2d 524, 530-31 (7th Cir. 1990) (affirming district court's exclusion of incident involving another employee; exclusion was "important to avoid significant litigation on issues that are collateral to those required to be tried"); *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989) (affirming district court's exclusion of evidence; "trial within a trial" would have consumed a great deal of trial time and would have had slight probative value).

Information regarding compliance and government investigation materials and issues has no probative value or possible relevance to Plaintiff's claims. Instead, by issuing the discovery requests, related deposition notices and subpoenas, Plaintiff is clearly attempting to exploit the fact that Kos is subject to ongoing government investigations. This discovery can only be described as an attempt to harass Abbott and needlessly prolong the length and expense of this litigation. This Court has recognized that "[w]hen the purpose of the discovery is to obtain information for reasons other than the prosecution or defense of the lawsuit, unless vital information is at stake, discovery will be denied in it entirety." *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes*, 262 F. Supp. 923, 927 (N.D. Ill. 2003). Thus, this case is an instance where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. Pro. 26(c); *see also Herbert v. Lando*,

7

441 U.S. 153, 177 (1979) (recognizing that "judges should not hesitate to exercise appropriate control over the discovery process").

### C. Abbott Has Produced Considerable Information and Documents Responsive to Plaintiff's Relevant Requests

In line with what is actually relevant in this case, Abbott has produced a great deal of information regarding Kos's employment policies and practices, its standards for terminating employees for cause, its stock option plans, and related policies and histories. Moreover, Abbott has produced extensive information regarding numerous former Kos employees, in addition to Plaintiff, including dozens of personnel files specifically requested by Plaintiff. Even with respect to those requests that are exceedingly overbroad and burdensome, Abbott has nonetheless produced non-privileged documents. For example, Abbott has produced materials in response to the following requests (and many similar requests)[1]:

- All documents and communications about, concerning, referencing and/or relating to Plaintiff . . . personnel files or records, notes, communications, correspondence, performance evaluations; stock options, discipline, termination, awards, commendations, job performance, comparisons between Plaintiff and other persons . . . . (Part of Plaintiff's First Request for Documents, #1).

- Any document which defines, refers or relates to or describes "cause," "malfeasance" and/or "wrongdoing" with respect to termination of employees. (Plaintiff's First Request for Documents, #16).

- Any Employee Handbook or similar document, including any modification, supplement or amendments thereto that applied to Perius or any Kos entity, person or agent. (Plaintiff's First Request for Documents, #25).

- Defendant's Code of Conduct, including documents relating to any amendments thereto. (Plaintiff's First Request for Documents, #26).

- The Kos Bi-laws, and documents relating to amendments thereto, or proposals for amendment. (Plaintiff's First Request for Documents, #32).

---

[1] Abbott has objected to many of these requests as overbroad, vague and/or nearly incomprehensible. In addition, Abbott has objected to any request that call for attorney-client privileged information and/or attorney work product. Nonetheless, it has produced a substantial number of documents, where available, in response to these and other similar requests.

8

- The Kos Incentive Plan and Nonqualified Stock Option Agreement, and documents relating to any amendments thereto, or proposals for amendment. (Plaintiff's First Request for Documents, #33).

- All documents relating to defendants' [sic] policies and practices relating to indemnification of employees for legal expenses. (Plaintiff's First Request for Documents, #34).

- All documents relating to the Kos Incentive Plan and Nonqualified Stock Option Agreement, including but not limited to documents which refer, describe, detail or relate to circumstances where in benefits under the plan may be rescinded or divested. (Plaintiff's First Request for Documents, #35).

- Any documents, including the personnel and/or disciplinary files of any person who supervised plaintiff within the last two years of his employment. (Plaintiff's First Request for Documents, #64).

To date, Abbott has produced over 21,000 pages of documents in response to Plaintiff's discovery requests. These documents include 138 pages of Plaintiff's stock option agreements and correspondence from 1997 to 2006, Plaintiff's complete personnel file, and the personnel files of twenty other former Kos employees. Abbott also produced the Kos incentive plan and by-laws and amendments thereto, as well as its applicable insurance policy, SEC filings, and restricted stock detail reports for many Kos employees. Abbott produced Kos's policies, procedures, and guidelines regarding insider trading and disclosure, information technology, and electronic and telephonic communications, as well as its Employee Confidentiality and Intellectual Property Agreement, Articles of Merger with Abbott, employee handbook and amendments thereto, codes of business ethics and conduct, the Kos Compliance Program presentation, records retention schedules, record hold orders, stock option plans, the Kos Nonqualified Stock Option Agreement and Restricted Share Award Agreement, Supplemental Guide to the KOS Employee Stock Purchase Plan, severance pay plan, stock exercise documents, and countless e-mails relating to Plaintiff.

The extensive discovery Plaintiff seeks concerning Kos's compliance and government investigation materials will do nothing to help prove or disprove his allegations regarding his termination, loss of stock options, or any other claims in this case. Therefore, Plaintiff should be prohibited from seeking this irrelevant and harassing discovery, and a protective order will accomplish just that.

**D. Plaintiff's Subpoena of Certain Witnesses Without Any
Connection to the Issues in This Case Must Likewise Be Limited**

In addition to the sweeping and irrelevant discovery requests detailed above, Plaintiff has issued deposition and document subpoenas for a number of witnesses who have little knowledge of or connection to the claims or defenses at issue in this case. A copy of Plaintiff's original Notice of Depositions is attached hereto as **Exhibit C**.[2] Then, on March 27, 2008, Plaintiff issued subpoenas for ten former Kos employees and Kos's outside attorney, John Hogan of Holland & Knight. Copies of those subpoenas are attached as group **Exhibit D**. With one exception, all of the individuals subpoenaed and identified on Plaintiff's Notice are former employees of Kos and are not currently employed by Abbott. Seven of the subpoenas relate to former Kos employees who worked for Kos on its "Managed Care" side of the business;[3] in contrast, Plaintiff is a former sales-side executive for Kos.

Abbott does not believe that any of these individuals (on the Managed Care side of the business) worked directly with Plaintiff at Kos, or that any of them were involved in or had any connection to the termination of Plaintiff's employment. Thus, Abbott believes that the only possible reason Plaintiff could have for deposing these individuals is to improperly delve into the underlying marketing and sales practices and related compliance issues. For the reasons detailed above, this is not a proper subject of discovery in this case, and Plaintiff should not be permitted to take the depositions of Messrs. Heatherman, Berg, Tilbury, Shewmake, Penn, Farkas and King without articulating a good-faith reason for such depositions and subpoenas.

In addition, Plaintiff is attempting to depose Kos's former CEO, Adrian Adams, and possibly several of Kos's former board members, including Mike Jaharis, Dan Bell and Robert

---

[2] The parties agreed to strike the specific deposition dates set forth on this Notice. Counsel for Abbott does not represent any of the individuals on the Notice (other than John Hogan), and all of the other individuals are represented by their own counsel. While all of these individuals are represented by separate counsel and may make their own objections and/or file motions to quash, Abbott believes it has standing to move for a protective order on these grounds. *See, e.g.*, *Atl. Investment Mgmt., LLC v. Millennium Fund I, Ltd*, 212 F.R.D. 395, 398 (N.D. Ill. 2002) (finding plaintiffs had standing to assert privilege argument where "there [was] no dispute the files sought by the subpoena contain documents protected by the attorney-client privilege and the work product doctrine" because "[w]hile a party ordinarily has no standing to object to a subpoena issued to a nonparty, that general rule does not apply where, as here, 'the party claims some personal right or privilege with regard to the documents sought'") (quoting Wright & Miller).

[3] The "Managed Care" subpoenaed individuals are: Dave Heatherman, Aaron Berg, Mike Tilbury, Lawrence Shewmake, Gerald Penn, Joseph Farkas and Richard King.

Baldini. However, Plaintiff has not explained how such former high-ranking officers and directors of Kos have any unique personal knowledge of information related to this case. Courts have repeatedly denied motions to compel depositions of high ranking officials absent a showing that such individuals have unique personal knowledge of the information sought. *Patterson v. Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (affirming district court's refusal to compel deposition of employer's corporate vice president with little direct knowledge of allegations in case where deposition would have been costly and burdensome); *Cmty. Fed.l Savings & Loan Ass'n v. Fed'l Home Loan Bank Bd.*, 96 F.R.D. 619 (D.D.C. 1983) (granting protective order prohibiting depositions of agency board members where plaintiffs failed to show they possessed unique personal knowledge or that such information was unavailable from other sources); *see also Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482-84 (10th Cir. 1995) (granting protective order to prohibit deposition of defendant's chairman of board of directors); *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991) (affirming protective order that prohibited deposition of president and director of corporation); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989) (upholding district court's granting of protective order to bar plaintiffs from deposing defendant's CEO); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming order prohibiting deposition of president of company).

Without a showing that Messrs. Adams, Jaharis, Bell and Baldini have a "unique or superior" knowledge of matters related to Plaintiff's claims, specifically the reasons for his termination or his alleged protected activity, Plaintiff should not be permitted to take the depositions of these individuals.

### E. LR 37.2 Certification

On or around October 16, 2007, during an extended telephone conversation regarding discovery issues, Abbott's counsel consulted with Plaintiff's counsel in a good faith effort to resolve differences concerning the subject matter of this motion, but the parties were unable to reach an accord. In this conversation, counsel for Abbott explained that discovery (including depositions) regarding the underlying sales and marketing was unrelated to any potential claims or defenses asserted in this case. Counsel for Plaintiff expressed disagreement, and the parties agreed to set forth their respective positions in writing. On October 22, 2007, Abbott's counsel sent a letter to counsel for Plaintiff explaining Abbott's position regarding discovery and depositions. A copy of counsel's October 22, 2007 letter is attached hereto as **Exhibit E**. On November 6, 2007, Abbott's counsel sent another letter clarifying Abbott's position on certain

11

issues. A copy of the November 6, 2007 letter is attached hereto as **Exhibit F**. On December 21, 2007, Plaintiff's counsel sent a letter in response. A copy of the December 21, 2007 letter is attached hereto as **Exhibit G**.

On January 17, 2008, Counsel for Defendant met with counsel for Plaintiff at her offices and discussed a number of discovery issues, including the scope of discovery demanded by Plaintiff and specific issues of compliance and investigation materials. There, Counsel again explained Abbott's position as to discovery and depositions into underlying compliance and investigation materials. Counsel for Abbott asked whether Plaintiff would agree to modify or limit certain discovery requests and planned depositions into the compliance and investigation materials. However, Plaintiff continued to insist that discovery as to compliance and investigation related materials was relevant to his claims. Plaintiff's counsel declined Abbott's invitation to go through the discovery request by request or otherwise limit or refuse any requests. Since this last meeting, the parties have been unable to resolve this particular dispute regarding government investigation and compliance matters.

### III. CONCLUSION

Plaintiff seeks information that is both irrelevant to his claims and not reasonably calculated to lead to the discovery of admissible evidence. Granting Abbott the relief it seeks—a protective order—will ensure that this litigation remains focused on what is truly relevant: namely, an evaluation of whether Plaintiff was engaged in protected activity under the relevant whistleblowing statutes and whether he was properly terminated for cause pursuant to the relevant plan documents. Accordingly, Abbott respectfully moves this Court to grant a protective order as to certain discovery requests.

Defendant respectfully requests that the Court issue an order: (i) prohibiting Plaintiff from seeking discovery of any kind concerning underlying compliance-related issues or alleged non-compliance with laws regarding sales and marketing practices, as well as any internal (via counsel or otherwise) or government directed investigations of such practices or related compliance issues; (ii) limiting all provisions in Plaintiff's discovery requests that seek documents or information concerning the underlying compliance-related issues or alleged non-compliance with laws regarding sales and marketing practices and related investigations, including the following specific discovery requests: Plaintiff's First Request for Production of Documents, numbers 3-5, 7, 10, 12-13, 17-24, 29, 44-46, 48, 54, 58 and 65; Plaintiff's First Set of Interrogatories, numbers 8, 11, 12, 13, 16, 18, (iii) striking the depositions and/or subpoenas

of witnesses who lack information regarding relevant issues, and could only testify regarding underlying sales and compliance issues, including Dave Heatherman, Aaron Berg, Mike Tilbury, Lawrence Shewmake, Gerald Penn, Joseph Farkas and Richard King; and (iv) striking the depositions of high-ranking former Kos officers and directors who lack unique personal knowledge of the information sought, including Adrian Adams, Mike Jaharis, Dan Bell and Robert Baldini.

        Respectfully Submitted,

        **ABBOTT LABORATORIES**

        By: /s/ *Kevin M. Cloutier*
            One of Defendant's Attorneys

James F. Hurst
Kevin M. Cloutier
Tiana F. Nell
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (tel)
(312) 558-5700 (fax)
kcloutier@winston.com

13

## **CERTIFICATE OF SERVICE**

      The undersigned attorney states that he caused a true and correct copy of the above-described MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER to be electronically filed with the Clerk of the Court using the CM/ECF system, and further caused the same document to be served on counsel for Plaintiff, via facsimile and United States Mail, on this 22nd day of April, 2008.

Robin Potter, Esq.
Denise M. Kelleher, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Drive, Suite 2600
Chicago, IL 60601

John P. DeRose, Esq.
John P. DeRose & Associates
15 Spinning Wheel Road, Suite 428
Hinsdale, IL 60521

      By: /s/ *Kevin M. Cloutier*
           One of Defendant's Attorneys