# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY M. PERIUS, | ) |
| Plaintiff, | ) Case No. 07 C 1251 |
| v. | ) Judge David H. Coar |
| | ) Magistrate Judge Geraldine Soat Brown |
| ABBOTT LABORATORIES, et al., | ) |
| Defendants. | ) |

## NOTICE OF FILING

TO: Kevin Cloutier, Esq.
Tiana Nell, Esq.
Winston & Strawn, LLP
35 W. Wacker Dr.
Chicago, IL 60601

**PLEASE TAKE NOTICE** that on Monday, May 19, 2008, I e-filed with the United States District Court for the Northern District of Illinois, **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER,** a copy of which is attached and is hereby served upon you.

Respectfully submitted,

/s/ Robin Potter
One of Plaintiff's Attorneys

Robin Potter, Esq.
Denise M. Kelleher, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Drive - Suite 2600
Chicago, IL 60601
(312) 861-1800
(312) 861-3009 (fax)
robinpotter@igc.org

John P. DeRose, Esq.
John P. De Rose & Associates
15 Spinning Wheel Road, Suite 428
Hinsdale, IL 60521
(630) 920-1111
(630) 920-1170 (fax)
jdrlaw@sbcglobal.net

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY M. PERIUS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 1251 |
| | ) | |
| v. | ) | Judge Coar |
| | ) | Magistrate Judge Soat Brown |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**<u>MOTION FOR PROTECTIVE ORDER</u>**

Defendant's Motion for a Protective Order appears to seek to enjoin plaintiff from discovering any evidence relating to (1) its compliance with government regulations over its marketing practices, and (2) the government's investigation into Kos' marketing practices.

<u>Introduction</u>

Defendant failed to conduct any Rule 37 conference prior to filing this document. However, the issues raised in the Motion have been discussed and are the subject of Plaintiff's pending Motion to Compel. As set forth below, defendant's ongoing refusal to produce witnesses and documents has plagued this case, and cries out for final redress. Compelling the witnesses and documents in issue was the subject matter of plaintiff's initial Motion to Compel (filed 12/26/07, Doc. #28). Defendant delayed producing documents but for Mr. Perius' personnel file until a Protective Order was entered on February 21, 2008. (Doc. #55). At that time, defendant represented to this Court that it's discovery production would resolve much of the initial Motion to Compel, and caused this court to strike the Motion as premature. See, 2/25/08 Order, Doc. #57. Said representations were false insofar as defendant delayed and ultimately refused to produce any documents relating to its investigation of Perius or the

governments related investigation of Kos. Thus, the initial Motion was never resolved, only delayed.

Defendant's Motion repeats the arguments already raised in Plaintiff's pending Motion to Compel and should be denied for the following reasons. First and foremost, defendant should be barred from seeking any relief from plaintiff's discovery insofar as it has engaged in a calculated strategy that has heretofore succeeded in delaying and preventing any meaningful discovery.

Secondly, because defendant refuses to disclose who fired Mr. Perius and why, it should not be heard to offer any reasons why any discovery is not relevant. It is an argument against a straw man. As such, since defendant fails to offer any support for its claim that the discovery sought is not "relevant," its argument is waived. *Abbott Laboratories v. Andrx Pharmacueticals, Inc.,* 2006 WL 2092377 (N.D. Il. 2006)(MJ Brown)(Abbott failure to provide support for its claim of work product production for Document 126).

Third, the discovery sought goes to the core of any employment case - it establishes comparative and pretext evidence and supports punitive damages  All Kos employees, including those sought to be deposed by Perius' counsel, were covered by the <u>same</u> Kos disciplinary policies, handbook, stock option plans and indemnification plans. Perius contends that others violated Kos policies, compliance laws, and were not (1) terminated; (2) stripped of their options or (3) denied payment for their criminal counsel under the Kos indemnity plan. This comparative evidence is discoverable, goes to defendant's malice, state of mind and pretext.

Fourth, defendant allegedly terminated plaintiff for violations of its compliance policies and for interfering with the investigation. In turn, plaintiff claims he was scapegoated by Hogan and Kos as a result of this investigation. Indeed, John Hogan, who participated in the termination, does not dispute that plaintiff's alleged failure to comport with the company's compliance policies and his alleged interference with the investigation were factors in the

decision. See M-Compel, Potter Decl., at ¶¶7-9 ( Doc. #62; filed 03/28/2008 ). Fifth, the rules define relevancy as broad, for purposes of discovery. Thus, the evidence relates to plaintiff's *prima facie* case. Plaintiff is entitled to show that these reasons are a lie, and that similarly situated employees who actually did violate the compliance policies and/or failed to cooperate with the investigation were treated differently. Courts are growing wary of company's attempts to obfuscate and lie about reasons for disciplining employees, and rightly so, as this case reflects. *Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486 (7th Cir. 2008)(summary judgment for employer reversed where employer gave irreconcilable reasons for discipline; and honesty of the employers statement is revealed in party by analyzing its reasonableness). Six, contrary to defendant's Memorandum, the evidence is also relevant to the defendant's state of mind, and to plaintiff's claim that he was made a scapegoat for marketing practices which were mandated by his superiors and were common throughout the company. *See e.g., Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18 (D.C.C. 2005)(allowing discovery into underlying compliance issues because "Defendant's motive to retaliate may be greater if plaintiff's concerns were in fact true."); *Kulikowski v. Board of County Commissioners,* 231 F.Supp.2d 1053 (D.Co. 2002)(employee was made a "scapegoat" in retaliation for protected activity.) Seventh, plaintiff is seeking punitive damages. Defendant's proffered and pretextual reasons for its actions against plaintiff, as well as its treatment of comparatives, will factor into his presentations to the jury. Eighth, plaintiff has until the end of June to add additional parties and claims and cannot do so without this basic discovery.

**SUMMARY OF RELEVANT FACTS**

**The OIG and Holland & Knight Investigations.** In February 2005, the United States Department of Health and Human Services began an investigation into the Company's sales and marketing practices. Deft's Mot. at 3. Perius was the *highest ranking Kos manager subpoenaed.*

Plf's Resp to Deft's First R. 33 Req., No. 12.  Other employees who worked under Perius were subpoenaed and interviewed by federal investigators.  Attorneys from Holland & Knight also conducted an investigation into defendant's marketing practices, itself interviewing dozens of employees.  Its investigation culminated in plaintiff's termination, with the investigators, Hogan and others yet to be identified, making the decision.  See, Pl. Reply, Mot. Compel.  What is clear, is that Kos-Abbott's handling of the government's investigation is inextricably intertwined with Mr. Perius' termination, in the context of this case.

**Defendant's Alleged Reasons for Plaintiff's Termination.**  As set forth in his two Motions to Compel, defendant has refused to answer discovery identifying its reasons for its termination or to produce any documents of its investigation, its interviews of Mr. Perius or other witnesses.  John Hogan, an attorney from Holland & Knight and defendant's compliance/Perius investigator participated in the termination.  Mr. Hogan told the undersigned that Perius allegedly obstructed the government's investigation. His evidence: Niedbalski (a District Manager who worked under plaintiff's supervision) allegedly stated to him that plaintiff asked him to delete computer files that were the subject of the government compliance investigation. Furthermore, Mr. Hogan also stated that plaintiff implemented a "quality initiative" marketing program which violated the company's Compliance policies. Potter Decl., at ¶¶7-9.  On May 14, 2008, pursuant to plaintiff's subpoena in the instant case, counsel for Dan Niedbalski produced compliance related documents.  Thus, the issue of whether Kos and various agents complied or not with federal law is in issue in this case.

**Plaintiff's Protected Activity and Comparative Evidence.**  From the date of the government subpoena through his termination, Plaintiff told Holland & Knight how Kos' marketing practices worked.  These practices were company-wide, approved and designed by Kos officials above Mr. Perius. *Id.*

Shortly before the company merged with Abbott, it abruptly discharged plaintiff and appropriated his stock options. No one in the history of the company has ever been terminated in such a harsh and vindictive manner. Employees in other regions, and even company officers, regularly flouted company's compliance policies (for which plaintiff may have been terminated), but were not disciplined. For instance, in or about December 2005, Steven Jaharis, M.D., a board-member of Kos and son of the Kos founder, asked Kos field representatives to use his personal season tickets for the Chicago Bulls to entertain doctors and clients. *Id.*

**Plaintiff's Stock Options.** Plaintiff's stock options were governed by the Kos Stock Option Agreement and Incentive Plan and the Kos Incentive Plan. These documents provide that an employee cannot lose vested stock options unless he commits a serious offense of "malfeasance" or is discharged "for cause." FAC, Exhibits A and B. Every managerial employee in the company was covered by the plan's benefits and its terms. Numerous Kos employees engaged in malfeasance or conduct which would have warranted their discharge "for cause." All received their options under the agreement, some were permitted to resign in lieu of discharged, and some were not disciplined at all. Katan Decl., at ¶25 ("I was shocked when I learned that Greg Perius was terminated and his options forfeited.")

**Abbott's Discovery Responses.** Abbott claims that it has produced "considerable information and documents responsive to Plaintiff's relevant requests." However, as plaintiff set forth in his Motion to Compel, this assertion is belied by its failure to produce <u>any</u> information relevant to the termination itself. Deft's Mot. at 8. To date, apart from Mr. Hogan's off-the-record statements, defendant's sole disclosure regarding the reasons for his termination has been that plaintiff was terminated for unspecified "violations of rules and policies." Defendant has failed to identify the decision-makers, the specific rules he was alleged to have violated, or what it claims he did wrong. The overwhelming majority of the 21,000 pages of documents referenced

Perius M-Prot. Order Response final +NOF-COS.wpd
May 19, 2008                                                      -5-

in its Memorandum are documents which are publically available, or which were already in plaintiff's control: More than 12,000 of these pages are the plaintiff's own emails. Another approximately 3,000 pages are the company's publically-available filings with the Securities and Exchange Commission. The Stock Option plans and corporate Bi-Laws referenced by defendant were exhibits to Plaintiff's Complaint, and additional documents, including plaintiff's personnel file and the Employee Handbook are part of his production to the defendant. Defendant withheld the investigation files on plaintiff and <u>all</u> the discipline files relating to any Kos employee.

## ARGUMENT

Under Rule 26, relevancy is "extremely broad," and information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *Hahn v. Downer's Grove*, 1999 U.S. Dist. LEXIS 8145 *10-11 (N.D.Ill. 5/26/99), *citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (stating "relevancy has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") As the *Hahn* court further noted, "'It is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.'" 1999 U.S. Dist. 8145 at *11. It is well-established that "discoverable information is not limited to that which would be admissible at trial." *Davis v. Precoat Metals,* 2002 U.S. Dist. LEXIS 13851 (7/29/02 N.D.Ill.) Furthermore, it is defendant's burden to show "good cause" to justify a protective order, and "conclusory statements of hardship are not sufficient to carry this burden." *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D.Ill. 2007); *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 450 (N.D.Ill. 2006)("the burden rests upon the objecting party to show why a particular discovery request is improper.") Defendant has not met its heavy burden to obstruct this discovery.

**I.     Information Relating to Defendant's Compliance with State and Federal Laws Governing Sales and Marketing Practices and to the Government and Holland & Knight's Investigations Is Relevant and Discoverable**

**A.     The Information Is Calculated to Lead to the Discovery of Admissible Evidence Relating to Comparators and to Pretext**

One of the most basic elements of both plaintiff's claims of retaliation, unlawful termination, unlawful conversion of stock options and failure to indemnify is to show that other similarly-situated employees were treated differently. *See, Hanekamp v. McKesson Corp.,* 2003 U.S. Dist. LEXIS 9859, *29 (N.D.Ill. 6/12/03)(in evaluating claim for unlawful conversion of options, court looked to comparative evidence and evidence of pretext, including the conduct of the decision-makers, the stated reasons for their decision, and the manner in which the plan was administered in the past with respect to other covered employees); *Stone v. City of Indianapolis,* 281 F.3d 640 (7th Cir. 2002)(applying *McDonnell-Douglas* framework to retaliation claims.) In the Seventh Circuit, "other employees must have engaged in similar--not identical--conduct to qualify as similarly situated." *Ezell v. Potter,* 400 F.3d 1041, 1050 (7th Cir. 2005)(reversing finding that employee must produce comparator who committed "exactly the same infraction" to be found "similarly-situated"); *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 688 (7th Cir. 2007)(the comparator analysis usually "involves showing that the employees shared the same supervisor, performance standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.") The U.S. Supreme Court recently broadened this standard, holding that the inquiry is fact specific, and even evidence relating to supervisors who were not decision-makers may be relevant. *Sprint/United Management Co. v. Mendelsohn*, 552 U.S.   , 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (2008).

Plaintiff has been given no reasons for his termination, but two allegations were made by Hogan: (1) interference with the government and Holland & Knight's investigation; and, (2) Perius' region was not compliant with the company's marketing policies. These are the subject matters for which defendant seeks to bar discovery. Such a ruling would irreparably prejudice plaintiff's case. In order to establish that "similarly situated" employees were treated differently, plaintiff must obtain discovery relating other employees' conduct with respect to the investigation, and with respect to defendant's marketing policies. Plaintiff is entitled to explore the policies themselves, how they were applied throughout the company, and evidence relating to others who did or did not comply with them. Plaintiff is further entitled to demonstrate that other similarly situated employees failed to cooperate with the investigation, destroyed or hid inculpatory evidence, lied to investigators, or committed other serious violations of company policy yet were not fired, received their options and were indemnified by Abbott's ongoing payments of their attorneys' fees, including in the federal investigation. *Ezell v. Potter,* 400 F.3d 1041, 1050 (7th Cir. ); *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 688 (7th Cir. 2007). Plaintiff's requests for this information seek relevant information. Defendant has not shown "good cause" to bar discovery into these subjects, and such an order would substantially prejudice the plaintiff.

Defendant's Memorandum fails to mention comparators or similarly situated employees. Instead, defendant asserts that evidence relating to the underlying issues of a company's compliance with the relevant regulations is *never* relevant in a *qui tam* retaliation action. *See,* Deft's Mem., at 5 ("[F]ederal courts have recognized that information regarding the merits of purported compliance violations underlying a whistleblower action are irrelevant to retaliation claims."). Defendant is wrong and this reasoning was soundly rejected in *Mendlesohn*, wherein the Court cautioned that relevance in the discrimination context is fact specific and *per se* rules

are not permitted. *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. , 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (2008) (rejecting a *per se* exclusion of evidence relating to comparators based solely on a finding that they had different supervisors). Further, plaintiff has demonstrated a need for this evidence under the facts of this case: the identification of comparators.

Defendant's authorities do not preclude the discovery of evidence under these facts. Its leading case, *McAllan v. Von Essen*, 517 F.Supp.2d 672 (S.D.N.Y. 2007) did not consider whether the information could lead to discovery of comparators. 517 F.Supp.2d at 677.

**B. The Information Is Also Relevant to Defendant's State of Mind and to Plaintiff's Claim that He was Made a Scapegoat**

In addition, contrary to defendant's assertions, evidence relating to underlying compliance issues and the OIG investigation is relevant to the defendant's state of mind. Other Courts to have considered this question have rejected the reasoning in *McAllan*. For instance, in *Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18 (D.C.C. 2005), the plaintiff alleged she was terminated in retaliation for her complaints about her employer's failure to comply with federal law governing education of students with special needs. After the plaintiff subpoenaed records relating to its compliance, and the defendant asserted the same argument as Abbott makes in this Motion: "TMA's actual compliance with IDEA laws is irrelevant -- the only relevant question is whether TMA terminated plaintiff in retaliation for the voicing of concerns about compliance." In rejecting this argument, the Court held as follows:

> The discovery of records regarding TMA's actual compliance with IDEA is reasonably calculated to lead to the discovery of admissible evidence. The records may be relevant to the defendant's intent and state of mind at the time of plaintiff's termination. If, in fact, TMA was not in compliance, then the claim of retaliation may have more force -- employers sometimes wrongfully terminate "whistle blowers" due to their airing of company misconduct. Defendant's motive to retaliate may be greater if plaintiff's concerns were in fact true. On the other hand, if TMA was in compliance, then the claim that they terminated a "whistle blower" may ring hollow.

230 F.R.D. at 22. This reasoning applies with great force to the instant case. Defendant's state of mind, including its incentive to retaliate against the plaintiff and take his options, can in part, be established if plaintiff's allegations of company-wide violations were in fact true. For this reason, under the facts of this case, the information is discoverable. *See, also, Tomanovich v. Glenn,* 2002 U.S. Dist. LEXIS 14885; 89 Fair Empl. Prac. Cas. (BNA) 1157 (S.D.IN. 8/13/02)(allowing discovery of other complaints of discrimination because it may be relevant to pretext), *citing, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (stating that an employer's general policy and practice with respect to minority employment may be relevant to establish pretext); *and citing, Phillip v. ANR Freight Sys., Inc.,* 945 F.2d 1054, 1056 (8th Cir.1991) (reversing district court's exclusion of other employees' age discrimination complaints filed against defendant); *Bell v. EPA*, 232 f.3d 546, 552 (7th Cir. 2000)(statistical evidence of discrimination allowed in disparate treatment case as part of the mosaic of individual treatment).

  Furthermore, the fact that defendant was culpable in the underlying violations also corroborates plaintiff's claim that he was made a scapegoat in retaliation for his complaints about compliance policies which were company wide and which were mandated by his superiors. *Kulikowski v. Board of County Commissioners,* 231 F.Supp.2d 1053 (D.Co. 2002)(fact that employee was made a "scapegoat" is evidence of retaliation.) In order to prove this claim, plaintiff must establish that the practices in his region were in line with those of the company as a whole. *See, e.g.,* Katan Declaration, ¶¶11-21 (Upper management defined the sales tools which could be used by the regions, and the regions used the same tools). For these reasons, this information is relevant. Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...")

Perius M-Prot. Order Response final +NOF-COS.wpd
May 19, 2008

-10-

## II. Defendant's Assertion that the Information Will Create a "Trial Within a Trial" Conflates Relevance in Discovery and Admissibility

Defendant's assertion that the information is not discoverable because it will create a "trial within a trial" conflates the standards governing discovery and admissibility, which are distinct. *Davis v. Precoat Metals,* 2002 U.S. Dist. LEXIS 13851 (7/29/02 N.D.Ill.); *Johnson*, 242 F.R.D. at 482-3 ("As expansive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence...the standard under the discovery provisions of the Federal Rules of Civil Procedure is even broader.") As set forth above, information relating to compliance issues and the investigations could lead to the discovery of admissible evidence relating to comparators, to defendant's state of mind, and to plaintiff's claim that he was made a scapegoat. Whether evidence is ultimately admissible, and how it is presented or limited at trial, is a different question, to be decided later. Indeed, three of the four cases cited by defendant in support of this "trial within a trial" proposition considered whether evidence was admissible, not whether it was discoverable. *See, McClellan v. Montgomery Ward & Co.*, 1995 U.S. Dist. LEXIS 14012 (N.D.Ill. 9/25/95)(ruling on a *Motion in Limine* to exclude evidence at trial under FRE Rules 401 and 403); *Sims v. Mulcahy*, 902 F.2d 524, 530 (7th Cir. 1990) (affirming ruling on a *Motion in Limine* regarding the admissibility of evidence at trial under FRE Rule 403); *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989)(affirming ruling on a *Motion in Limine* regarding the admissibility of evidence at trial under FRE Rule 404.)

Indeed, only one of the cases cited by defendant in its "trial within a trial" argument, *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994), addresses relevance in the context of discovery, and *Gehring* is easily distinguishable. In *Gehring*, the trial court examined certain personnel files sought by the plaintiff. After examining the files *in camera*, the Court determined they were marginally relevant to plaintiff's claims and production would impinge on

employee privacy. It did not impose the broad subject-matter prohibition defendant seeks herein, and indeed "permitted live testimony (in Gehring's favor) from one of the proposed comparison employees." 43 F.3d at 342. By contrast, in this case, plaintiff has demonstrated the need for the information. *See, e.g., Davis v. Precoat Metals,* 2002 U.S. Dist. LEXIS 13851 (7/29/02 N.D.Ill.)(distinguishing *Gehring* where plaintiff established a need for the information). Furthermore, the privacy concerns raised in *Gehring* with respect to personnel files are not an issue in this case. Indeed, defendant has already produced the personnel files of certain employees, acknowledging that the Protective Order which has been entered in this case obviates the privacy concerns set forth in *Gehring*.

### III. Plaintiff's Discovery Requests Are Reasonably Tailored to His Claims and the Deponents He Has Identified Have Relevant Information

**Plaintiff's Rule 33 and Rule 34 Requests.** Defendant's assertions that plaintiff's discovery requests are overly broad should be rejected. First, this argument is belied by defendant's failure to disclose a formal statement of its reasons for plaintiff's termination and the identities of the decision-makers. Indeed, it is difficult for plaintiff to narrow his requests when "violations of company rules and policies" is its sole reason for termination. The breadth of defendant's own reasons justifies broad requests, and arguably places all of its "rules and policies" in issue.

More importantly, however, defendant's assertions about the requests are simply not true. The requests identified on pages 5 through 7 of its Memorandum appropriately seek discoverable information. Indeed, one of the requests described as "overbroad" asks for documents relating to "quality initiatives," which were specifically cited by John Hogan as a factor in his termination. Deft's Mem., at 6, citing Pltf's Req for Docs, No. 19. Similarly, documents relating to the OIG's and Holland & Knight's investigation into the marketing practices are relevant to

plaintiff's cause of action since this investigation led to his termination, and the attorneys who conducted the investigation participated in the decision to terminate his employment. Furthermore, since plaintiff's alleged obstruction of this investigation was a factor in his termination, other employees' communications, submissions, omissions, compliance (or non-compliance), and conduct during the investigation are relevant as well. Simply put, there is no way to determine whether there might be comparators with respect to the "obstruction" issue, other than to examine the information they provided. Deft's Mem., at 5-6, citing Pltf's Req for Docs, No. 4, 10, 19 and 65, Interrogatory No. 12. Finally, the remaining requests noted by defendant relate to its underlying compliance policies, for the reasons set forth above, this information is relevant and discoverable.[1] Deft's Mem., at 6-7, citing Pltf's Req for Docs, No. 17, 18, 58, and Interrogatory No. 18.

**Depositions**. Furthermore, defendant's assertion that its high-ranking corporate officers may not be required to give depositions "absent a showing that such individuals have unique personal knowledge of the information sought" is contrary to law and is not justified in light of the facts of this case. Deft. Mem., at 11. In *Johnson v. Jung,* 242 F.R.D. 481, 483 (N.D.Ill. 2007), the Court rejected this identical argument, and compelled the deposition of its CEO because she had knowledge of issues relevant to the plaintiff's claims. In so doing, the court noted, "The test under Rule 26 is not whether a putative deponent had personal involvement in an event, or even whether she has "direct" knowledge -- which is merely another way of saying that she was a participant in the event -- but whether the witness may have information from whatever source that is relevant to the claim or defense." *Johnson v. Jung,* 242 F.R.D. 481, 483 (N.D.Ill. 2007). The "high ranking officers" cited in defendant's Memorandum, e.g., Mssrs.

---

[1] Plaintiff hereby agrees to withdraw document request Number 20, relating to prescriptions by Kos providers. As set forth herein, defendant failed to confer about these specific requests.

Adams, Jaharis, Bell and Baldini, each have knowledge of plaintiff's termination, the compliance policies and practices, the OIG and Holland & Knight investigations, and the relative cooperation of various employees with respect to the same. Further, as set forth above, plaintiff was scapegoated for marketing practices that were company wide, and which were condoned and created by high-ranking company officers such as these. Katan Decl., at ¶11. In addition, Board-Member Steve Jaharis flouted company marketing policies with impunity, and such evidence relates to pretext. In summary, because they have information relevant to these critical issues and others, defendant has not met its burden. *Johnson,* 242 F.R.D. at 486 ("highly placed executives are not immune from discovery.")

Moreover, the remaining deponents delineated in defendant's Memorandum also have relevant information and must be deposed. Mssrs. Heatherman, Berg, Tilbury, Shewmake, Penn, Farkas, and King were all subject to the Kos Incentive Plan, and have knowledge of other employees who were terminated but retained their options. In addition, each has knowledge of employees who violated state and federal regulations governing marketing and also Kos Compliance policies, but were not terminated. Furthermore, each attended national meetings with plaintiff where he and others discussed "quality initiatives" and other marketing practices with the national sales team. Mr. Tilbury was plaintiff's direct supervisor for eight years and along with David Heatherman, hired the plaintiff. Furthermore, plaintiff specifically voiced complaints to Mr. Tilbury about the company's marketing practices. Pl. Resp. to Deft's Rule 33 Req., No. 12. Finally, each has knowledge of employees who hid or destroyed relevant information, or otherwise failed to comply with requests for information relevant to the OIG and Holland & Knight investigations. For these reasons, they must be deposed.

### IV. Defendant Did Not Meet and Confer with Plaintiff's Counsel on the Issues It Seeks to Enjoin in this Motion

Contrary to defendant's assertions, defendant's counsel never spoke with plaintiff's counsel with respect to the subject matter of this Motion and did not fulfill his obligations under Local Rule 37.2. Specifically, counsel never told plaintiff that he intended to file this Motion, and has ignored plaintiff's submissions regarding the relevance of this evidence. The Motion does not even mention the issue of comparators. *See*, Pl's December 12, 2007 correspondence. However, it is clear that the parties disagree in substance on these issues. A ruling will expedite discovery, and plaintiff does not oppose such a ruling based solely on defendant's non-compliance with Local Rule 37.2.

### CONCLUSION

**WHEREFORE,** for the reasons set forth above, this Motion should be denied, and the discovery at issue compelled.

Respectfully submitted,

By: /s/ Robin Potter
One of Plaintiff's Attorneys

| | |
|---|---|
| Robin Potter, Esq. | John P. DeRose, Esq. |
| ROBIN POTTER & ASSOCIATES, P.C. | John P. De Rose & Associates |
| 111 East Wacker Drive - Suite 2600 | 15 Spinning Wheel Road, Suite 428 |
| Chicago, IL 60601 | Hinsdale, IL 60521 |
| (312) 861-1800 | (630) 920-1111 |
| (312) 861-3009 (fax) | (630) 920-1170 (fax) |
| robinpotter@igc.org | jdrlaw@sbcglobal.net |

Perius M-Prot. Order Response final +NOF-COS.wpd
May 19, 2008

-15-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER was served on the parties listed below by electronic filing, before 5 pm on this 19th day of May, 2008, and addressed as follows:

> Kevin Cloutier, Esq.
> Tiana Nell, Esq.
> Winston & Strawn, LLP
> 35 W. Wacker Dr.
> Chicago, IL 60601

.
/s/ Robin Potter
Robin Potter

Perius M-Prot. Order Response final +NOF-COS.wpd
May 19, 2008

-16-