# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY M. PERIUS, | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 1251 |
| | ) |
| v. | ) District Judge David H. Coar |
| | ) |
| ABBOTT LABORATORIES, | ) Magistrate Judge Geraldine Soat Brown |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court are several discovery motions: Plaintiff's Renewed Motion to Compel [dkt 62], Defendant's Motion to Quash or Modify Subpoena [dkt 70], and Defendant's Motion for Protective Order [dkt 72]. The parties have submitted extensive briefing, including supplemental information and authority.[1] Those motions raise a number of common questions, which are ruled

---

[1] Plaintiff's Renewed Motion to Compel ("Pl.'s Mot.") [dkts 61 & 62]; Abbott's Memorandum of Law in Opposition to Plaintiff's Motion to Compel ( "Def.'s Opp'n Mot.") [dkt 69]; Plaintiff's Reply Memorandum in Support of Plaintiff's Renewed Motion to Compel ("Pl.'s Reply") [dkt 78]; Defendant's Motion to Quash or Modify Subpoena ("Def.'s Mot. Quash") [dkt 70]; Plaintiff's Response in Opposition to Defendant's Motion to Quash or Modify Subpoena ("Pl.'s Resp. Mot. Quash") [dkt 82]; Defendant's Reply in Support of its Motion to Quash ("Def.'s Reply Mot. Quash") [dkt 88]; Defendant's Motion for Protective Order ("Def.'s Mot.") and Memorandum in Support [dkts 72 & 73]; Plaintiff's Response to Defendant's Motion for Protective Order ("Pl.'s Resp. Prot. Order") [dkt 81]; Abbott's Reply in Support of its Motion for Protective Order ("Def.'s Reply Mot. Prot. Order") [dkt 89]; Plaintiff's Supplemental Authority Supporting the Application of *McDonnell-Douglas* to Section 3730(h) Claims ("Pl.'s Suppl. Authority") [dkt 95]; Abbott's Response in Opposition to Plaintiff's Supplemental Authority ("Def.'s Resp. Suppl. Authority") [dkt 97]; Abbott's Additional Authority (Deposition Transcript References) in Further Support of its Motion for a Protective Order ("Def.'s Dep. Tr. References") [dkt 102]; Plaintiff's Response to Abbott's Additional Authority (Deposition Transcript References) ("Pl.'s Resp. Dep. Tr.") [dkt 107].

1

upon as follows.

BACKGROUND

Perius's Third Amended Complaint

The Third Amended Complaint ("TAC") [dkt 109] alleges that plaintiff Gregory Perius worked for Kos Pharmaceuticals ("Kos") between May 1997 and November 17, 2006, with his last position being Regional Director of Commercial Operations for Kos's Central Region. (*Id.* ¶ 5.)[2] In December 2006, defendant Abbott Laboratories ("Abbott") acquired the majority of the shares of Kos and all of Kos's assets and liabilities. (*Id.* ¶ 8.)

During his employment by Kos, Perius was granted approximately 84,463 Kos stock options, some of which he exercised, and 857 stock grants. (*Id.* ¶ 15.) At the time of his termination, Perius had 72,963 stock options of which 51,562 were vested. (*Id.* ¶ 19.) Perius claims that he was unlawfully terminated and his stock options wrongfully converted and withheld. (*Id.* ¶ 2.) At the time of his termination, his stock options had a value in excess of $3 million. (*Id.* ¶ 19.)

In February 2005, Kos was notified that it was being investigated by the United States Department of Justice ("DOJ") regarding its sales and marketing practices. (*Id.* ¶ 28.) Perius received a subpoena from the DOJ in March 2005. (*Id.*) Perius alleges that he cooperated with Kos's in-house counsel and its retained counsel, Holland & Knight, and reported practices that he believed disclosed violations of state or federal law. (*Id.* ¶¶ 28-38.) He alleges that Kos executives, upon being informed that the DOJ intended to pursue criminal and civil remedies against Kos,

---

[2] Perius's motion for leave to file his Third Amended Complaint adding Adrian Adams as an individual defendant was granted on July 17, 2008. [Dkt 116.] Abbott has moved to dismiss portions of that Complaint. [Dkt 118.]

terminated Perius in retaliation for his protected activity in order to create a "scapegoat" and to promote the impending merger with Abbott. (*Id.* ¶¶ 40-42.) Perius asserts a number of claims including retaliation, breach of contract, and defamation .[3]

Holland & Knight's investigation, and Mr. Hogan's conversation with Ms. Potter

John Hogan, a partner in the law firm of Holland & Knight, represented Kos in connection with the DOJ investigation beginning in 2005. (Def.'s Opp'n Mot., Ex.W, Aff. John M. Hogan ¶ 5.) Holland & Knight attorneys represented Kos in a number of matters before that time, and continue to represent Abbott, although not in this lawsuit. (*Id.* ¶4.) Mr. Hogan states that he and other Holland & Knight attorneys investigated allegations regarding Kos's marketing and sales practices, and interviewed dozens of Kos employees, including Perius. (*Id.* ¶ 6.) Before each interview, he advised the employee that the conversation was privileged and confidential, and that only Kos could waive the privilege. (*Id.* at ¶ 7.) He states:

> In November 2006, Holland & Knight attorneys, including myself, were asked by Kos's in-house counsel to investigate certain circumstances regarding Mr. Perius's conduct of which the Company had recently become aware. As legal counsel for Kos, Holland & Knight attorneys, including myself, interviewed Mr. Perius and a number of other employees during the month of November 2006.

---

[3] The Third Amended Complaint alleges nine counts: Count I: Unlawful Retaliation under False Claims Act, 31 U.S.C. § 3730(h) (against Abbott); Count II: Unlawful Retaliation under Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/4 (g) (against Abbott); Count III: Unlawful Retaliation under Illinois Whistleblower Act, 740 ILCS 175/20 (against both defendants); Count IV: Conversion/Breach of Stock Options and Incentive Agreements (against Abbott); Count V: Declaratory Judgment: Duty to Indemnify and Defend (against Abbott); Count VI: Illinois Wage Payment and Collection Act, 820 ILCS 115/2 (against both defendants); Count VII: Intentional Infliction of Emotional Distress (against both defendants); Count VIII: Defamation (against both defendants); and Count IX: Breach of contract (against Abbott).

(*Id*. ¶ 12.)

On December 4, 2006, about two weeks after Perius's termination, Robin Potter, one of Perius's attorneys, spoke with Mr. Hogan. (Pl.'s Mot., Ex. E, Decl. Robin B. Potter ¶ 4.) According to Ms. Potter, Mr. Hogan did not tell her the reasons why Perius was terminated, but did tell her "the allegations and some of the statements made against and/or concerning Mr. Perius." (Potter Decl. ¶ 5.) In particular, Mr. Hogan told Ms. Potter that an employee, Daniel Niedbalski, said that Perius asked him to delete information relating to the government investigation from his (Mr. Niedbalski's) computer and to coach employees' statements regarding the internal investigation. (*Id*. ¶ 7.) Also according to Ms. Potter, Mr. Hogan said that Perius's region followed a "quality initiative program" that was outside the scope of company policy and was a factor in the government's investigation. (*Id.* ¶¶ 8-9.) Mr. Hogan gave Ms. Potter a Termination Action Form from Perius's personnel file. (Pl.'s Mot., Ex. B.) It was signed by Kevin Phox and Mark Glickman and identifies a "Termination Reason Code 302," which is "violation of company rules or policies." (*Id*.) The form also states, "Not eligible to exercise vested stock options." (*Id*.).

Mr. Hogan says that in his December 4, 2006 conversation with Ms. Potter, he "gave her general facts regarding the situation, but [he] did not disclose the exact substance of any privileged communications. Nor did [Mr. Hogan] discuss with her any aspect of the compliance investigation not directly related to Mr. Perius." (Hogan Aff. ¶ 14.)

The discovery motions

The District Judge has set discovery to close on October 30, 2008, with expert disclosures by Perius on that date and by Abbott on November 30, 2008. [Dkt 59.]

4

In Plaintiff's Renewed Motion to Compel, Perius seeks to compel further responses to twelve interrogatories and eight document requests. Hearings were held on the motion, with rulings on some of Perius's interrogatories. Abbott was required to state every reason relied upon for Perius's termination, including every policy Perius was found to have violated, and to state the persons who participated in the decision. [Dkt 90.] Abbott served supplemental interrogatory answers, which Perius states provide the basis for his Third Amended Complaint. (Pl.'s Mot. for Leave File Third Am. Compl. ¶ 2.) [Dkt 114.] According to Perius, Abbott contends that Perius was terminated because Kos believed he encouraged Daniel Niedbalski and other Kos employees to alter or partially delete documents related to the investigation. (TAC ¶ 48.)

In addition to Abbott's objection that most of the requests and interrogatories are overly broad, two central issues emerge from the motion: first, Abbott's assertion of attorney-client privilege with respect to communications with Mr. Hogan; and second, Perius' request that Abbott identify "each employee or person who was alleged to or investigated or determined by the company to have violated any law, any Kos policy or provision of the Kos Compliance Program and Code of Business Ethics and Conduct," on the ground that Perius is entitled to support his retaliation claim with evidence that similarly situated persons were treated differently. (Pl.'s Mot. at 11, 13.) Perius seeks all documents produced by any person during the course of any investigation of Kos, arguing that he is entitled to discover the evidence defendants obtained, reviewed, and relied on in terminating him and not terminating others who allegedly violated company rules. (*Id.* at 24.) Abbott states that it has already produced over 21,000 pages of documents, including Perius's personnel file and the personnel files of twenty other former Kos employees. (Def.'s Opp'n Mot. at 5.)

5

Abbott's Motion for a Protective Order argues that Perius's requests constitute an improper attempt to take discovery on the issue of whether Kos's marketing complied with government regulations. (Def.'s Mot. at 2.) Indeed, Perius seeks "any document reproduced to any outside agency, entity, or person in connection with any investigation of Kos," and all Kos and Abbott documents "relating to [Kos's and Abbott's] sales and marketing practices," arguing that their actions toward Perius "cannot be separated from the government's investigation or whether Kos and its employees complied with or violated the law...." (Pl.'s Mot. at 4, 25, 26.) Abbott also objects to Perius's notice of deposition for seventeen persons and subpoenas served on ten former Kos employees and Mr. Hogan. (Def's Mot., Exs. C and D.) In its reply brief, Abbott seeks a stay of discovery pending the DOJ investigation. (Def's Reply Mot. Prot. Order at 13-14.) That request, of course, is outside the jurisdiction of this court and must be addressed to the District Judge.

Abbott's Motion to Quash or Modify Subpoena: Perius served a subpoena on Mr. Hogan, seeking, *inter alia*, "all documents ... that refer or relate to KOS, Greg Perius" or Mr. Hogan's work for Kos or Abbott. (Def.'s Mot. Quash, Ex. A.) Abbott asserts that the "vast majority" of the documents are protected by attorney-client privilege and work product protection. (Def.'s Mot. Quash at 3.) Abbott has produced a privilege log asserting attorney-client privilege, work product protection, or both over certain documents. (Pl.'s Mot, Ex. A, Privilege Log.)

Abbott also brought a Motion for a Limited Protective Order [dkt 83], seeking limitations on Perius's counsel's deposition questioning of two former Kos employees, Mark Glickman and Daniel Niedbalski. The motion was moot as to Mr. Glickman because he refused to appear for his deposition. [Dkt 87.] The motion was granted in part as to the deposition of Mr. Niedbalski, with the court ruling on the record that certain subjects are beyond the scope of discovery in this case.

(Order, June 13, 2008.) [Dkt 90.] Mr. Niedbalski's deposition proceeded, and Abbott identified certain questions to which its counsel objected as contrary to the protective order. (Def.'s Dep. Tr. References, Ex. B., Deposition of Daniel Niedbalski.)

DISCUSSION

A. The scope of discovery

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1). The rule also provides that "for good cause," the court may order discovery of any matter "relevant to the subject matter involved in the action," but such an order has not been entered in this case. Discovery in this case is limited to any nonprivileged matter that "is relevant to any party's claim or defense."

*1. The investigations and Kos's marketing and sales practices*

Perius claims in this case that Kos (and Abbott) breached his contract, retaliated against him, and defamed him because of his cooperation with the DOJ investigation. Those claims do not justify Perius's requests for wholesale discovery into Kos's compliance with state and federal laws governing sales and marketing practices and into the investigations by the DOJ and Holland & Knight.

Perius's briefs argue that his broad discovery requests should be compelled because Abbott has "stymied" discovery by refusing to state who made the decision to terminate him and the reasons

7

for that decision. (*See, e.g.,* Pl.'s Reply at 1-2; Pl.'s Resp. Prot. Order at 2). That argument is now moot. Abbott has disclosed that information.

But Perius's discovery requests go far beyond that. Perius admits that his discovery is aimed at proving that the "defendant was culpable in the underlying violations...." (Pl.'s Resp. Prot. Order at 10.) Perius argues that Abbott's actions toward him "cannot be separated from the government's investigation or whether Kos and its employees complied or violated the law...." (Pl.'s Mot. at 4.) That is not correct. In *Fleming v. County of Kane*, 898 F.2d 553 (7th Cir. 1990), the Seventh Circuit affirmed excluding evidence that the plaintiff-employee's criticism of the county's practices was not true and that the practices were proper.

> [The trial judge] firmly maintained, and both parties concede, that *the extent to which Fleming's allegations were true or false did not affect his right under the first amendment to raise those concerns*. Thus, the district court's evidentiary rulings were an attempt to focus the jury's attention on that issue which it was obligated to decide – i.e., whether Fleming's termination was motivated by his first amendment activity or whether it was motivated by other constitutionally legitimate considerations.

*Id*. at 558 (emphasis added).[4] In contrast, in *Hasan v. Dept. of Labor*, 400 F. 3d 1001, 1005 (7th Cir. 2005), defendants-prison officials presented, as a defense to the plaintiff prisoner's retaliation claim, uncontradicted evidence that they punished the plaintiff not because he tried to exercise free speech but because his accusation was a lie. Here, Abbott does not contend that Perius was terminated for making false allegations about Kos to the investigators. Thus, whether Kos is culpable of marketing violations is not directly relevant to any claim or defense.

Perius argues that proving Kos violated regulations would be relevant to the decision-makers'

---

[4] *Fleming* was decided before the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

8

state of mind. The court in *Fleming* considered whether evidence that the plaintiff's accusations were wrong might be "at least tangentially relevant" to motivation, but agreed with the district court that any potential relevance would be substantially outweighed by the potential unfair prejudice to the plaintiff's right to speak out. *Fleming*, 898 F.2d at 558. The district court was concerned that the plaintiff's claim might be obscured by a "mini-trial" on the propriety or impropriety of the county procedures. *Id.* Here, there is nothing "mini" about the discovery Perius seeks concerning the investigations and Kos's marketing practices. If permitted, that discovery would overwhelm discovery relating to Perius's claims. Additionally, in this case, Perius's effort to prove Kos culpable could potentially interfere with the ongoing DOJ investigation.

The court concludes that the generalized discovery Perius seeks regarding whether Kos or its employees committed marketing violations, including generalized discovery regarding the DOJ and Holland & Knight investigations, is not relevant to, or likely to lead to admissible evidence on, any claims or defenses. To the extent such evidence would have any "tangential" relevance, the court determines, after weighing the factors set out in Rule 26(b)(2)(C)(iii), that such discovery is not permitted.

### 2. *Identification of and information about comparators*

Perius argues that he needs discovery about comparators so that he can prove his retaliation claim under False Claims Act, 31 U.S.C. § 3730(h), through the *McDonnell Douglas* burden-shifting method. (Pl.'s Suppl. Authority at 5-6.) Although Perius admits that the Seventh Circuit has not specifically held that the *McDonnell Douglas* method can be used in the to support a claim under § 3730(h), the Seventh Circuit endorsed the *McDonnell Douglas* method for a retaliation claim in the

9

Title VII context in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002), and for a claim under the Energy Reorganization Act, 42 U.S.C. § 5851, in *Hasan*, 400 F.3d at 1003-04 (plaintiff allegedly was not hired by engineering firm in retaliation for reporting that the firm was covering up safety problems at a project on which plaintiff was working for another employer). It is the trial judge's prerogative to decide the admissibility of evidence, but the court concludes that there is a sufficient argument for the admission of evidence of comparators in support of Perius's retaliation claim to justify discovery focused on that topic.

"[T]he adaptation of *McDonnell Douglas* to the retaliation context, requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner." *Stone*, 281 F.3d at 644. This formula instructs that a comparator must be "similarly situated" and "did not file a charge."

There are a few problems with determining the scope of discovery regarding comparators here. To start, Perius's protected activity is not as objectively identifiable as "filing a charge." Perius claims that the protected activity for which he was fired was "repeatedly [telling] the company lawyers and top executives Kos continued to engage in practices that ran afoul of the law and in particular, outside his region." (Pl.'s Suppl. Authority at 5.) Identifying similarly situated persons who did not engage in comparable protected activity is not as simple as finding employees who did not file a charge.

Secondly, Perius has described the potential comparators in various ways: "employees who were less forthcoming in the investigation [but] were treated differently" (Pl.'s Mot. at 25); "others who 'allegedly' violated company rules" (*id*. at 24); "employees who did in fact destroy documents"

10

(*id*. at 28); and "[e]mployees in other regions, and even company officers, [who] regularly flouted company's compliance policies (for which plaintiff may have been terminated), but were not disciplined." (Pl.'s Resp. Prot. Order at 5.)

As a specific example of a potential comparator, Perius cites former Kos board member Steven Jaharis, whom, Perius claims, asked Kos field representatives to use his personal season tickets to Chicago Bulls games to entertain doctors and clients. (Pl.'s Resp. Prot. Order at 5.) It is questionable whether that alleged conduct makes Mr. Jaharis comparable to Perius, who allegedly attempted to obstruct the investigation. *See Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1326 (Fed. Cir. 1999) (stating that under the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), "the conduct and the circumstances surrounding the conduct of the comparison employee [must be] similar to those of the disciplined individual."). Perius also identifies Mark Glickman, who allegedly reported the theft of his computer, as a potential comparator because "[i]t was rumored at Kos that Mr. Glickman's computer disappeared under different circumstances." (Pl.'s Mot. at 22.) This, according to Perius, justifies discovery as to whether Mr. Glickman was investigated for theft. (*Id.*) Abbott has produced Mr. Glickman's personnel file. (*Id*. at 21-22.) How Perius intends to proceed on the rumor is not explained.

Perius's previously-served discovery regarding comparators is clearly too broad. Perius seeks information about "each employee or person who was alleged to or investigated or determined by the company to have violated any law, any Kos policy or any provision of the 'Kos Compliance Program and Code of Business Ethics and Conduct.'" (Pl.'s Mot. at 11, Interrog. 8.) That is just fishing. Not all violations of every policy are or should be treated equally, and exploring irrelevant and plainly incomparable situations will waste the parties' resources – including time – available for

11

meaningful discovery.[5] Now that Abbott has disclosed the reasons for Perius's termination, Perius's attorneys should be able to craft focused discovery requests directed to obtaining information about potential comparators. Perius's motion to compel the current discovery requests relating to comparators is denied without prejudice to his serving such narrower, focused discovery.

B. <u>Attorney-client privilege and work product protection for Mr. Hogan's investigation</u>

*Upjohn Co. v. U.S.*, 449 U.S. 383 (1981), established that confidential communications between employees and an attorney retained to conduct an internal investigation may be protected by the attorney-client privilege, and that the attorney's notes and memoranda may be protected work product. *See also In re Application for an Order for Judicial Assistance*, 244 F.R.D. 434, 439 (N.D. Ill. 2007). Thus, Abbott is correct that communications with Mr. Hogan and his work product *may* be protected. Decisions about particular assertions of privilege, however, are to be made on a "case-by-case" basis. *Upjohn*, 449 U.S. at 396.

*1. Perius's waiver arguments*

Perius argues that Abbott has waived any privilege or protection for Mr. Hogan's work. That argument, in turn, has two prongs: first, that the Mr. Hogan's conversation with Ms. Potter constituted a waiver of any privilege or protection; and second, that Abbott has put the protected information "at issue" in the litigation.

Reviewing the affidavits of Ms. Potter and Mr. Hogan leads to the conclusion that the

---

[5] For example, Perius's counsel argued that Perius should be able to discover "[w]as anyone in violation of any Kos policy, whether it was dancing nude on a table –." (Pl.'s Resp. Dep. Tr., Ex. A, Tr. June 13, 2008 at 19.)

privilege has not been waived. There is no indication that the information that Mr. Hogan gave was privileged, *i.e.,* legal advice or confidential communications to the attorney for the purpose of obtaining legal advice. The documents that he provided to her were not privileged. The Termination Action Form stated that Kos terminated Perius for violating the company's rules or policies. Mr. Hogan only disclosed factual information, specifically, further detail behind the statement in the Form. Perius has not demonstrated that privileged communications were disclosed. "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:... 'A fact is one thing and a communication concerning that fact is an entirely different thing.'" *Upjohn,* 449 U.S. at 395-96 (*quoting Philadelphia v. Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (E.D. Penn. 1962)).

Nor has Perius demonstrated that Abbott waived its privilege by putting privileged communications at issue. Abbott has not asserted reliance on advice of counsel as a defense or otherwise formally inserted privileged communications as part of the case, as Perius tacitly admits (Pl.'s Reply at 9). Perius's argument amounts to a theory that Abbott will inevitably have to assert such reliance, and speculation that Mr. Hogan and other attorneys were part of the decision to terminate Perius. (*Id.* at 9-11.) That is not sufficient. If at a later time Abbott asserts reliance on advice of counsel or otherwise injects privileged communications into the case for its own benefit, Perius may re-raise his argument. But at this time there is no evidence to support a waiver of privilege or work product protection on that basis.

> 2. *Business advice or legal advice*

Secondly, Perius argues that the decision to terminate him was a business decision, and Mr.

Hogan's communications about that business decision are not protected. The attorney-client privilege does not protect business advice, even when the advice is given by an attorney, but it does protect an attorney's *legal* advice about a business decision. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (general counsel gave legal advice about plaintiff's employment placement to others who made the business decision).

Mr. Hogan states that his only involvement in Perius's termination was as a legal advisor, and that he did not make the termination decision. (Hogan Aff. ¶ 13.) Perius claims that is not true (Pl.'s Resp. Mot. Quash at 3), but at the time of his brief, Perius could only speculate because Abbott had not disclosed the decision-makers, as it now has. Many of Perius's arguments make assumptions about the roles of the lawyers that may or may not be correct. (*See, e.g.*, Pl.'s Reply at 19, stating that "the *Upjohn* analysis does not apply in this case because the attorneys participated in the illegal decisions.").

Prior to being required to disclose the decision-makers, Abbott had argued that the identities of the decision-makers were covered by attorney-client privilege, comparing the situation here to criminal cases in which the identity of the client was held privileged. (Def.'s Opp'n Mot. at 13.) Of course, Mr. Hogan's clients have already been disclosed: Kos and Abbott. Abbott claimed that if one of the decision-makers was an attorney, the identity of the decision-makers discloses the attorney's legal advice to fire Perius. (*Id*. at 13-14.) That argument is at odds with Mr. Hogan's position that he did not make the business decision to fire Perius.

Perius requests that the court review *in camera* the documents listed on Abbott's Privilege Log. (Pl's Resp. Mot. Quash at 2.) That Log lists a number of documents from or to Mr. Hogan purportedly relating to Perius or legal advice regarding Perius's termination. In order to test

Abbott's assertion of privilege for those documents, including whether Mr. Hogan's role was as a business or legal advisor, the court will review the following documents *in camera*: Documents 4, 5, 18, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, and 34. Abbott is hereby ordered to deliver them for *in camera* inspection within three business days of this decision.

In summary, the motion to quash or modify Perius's subpoena to Mr. Hogan seeking, *inter alia*, "all documents ... that refer or relate to Kos, Greg Perius" or Mr. Hogan's work for Kos or Abbott "in any capacity" (Def.'s Mot. Quash, Ex. A), is granted, both because the subpoena is overly burdensome in requesting material not within the scope of discovery in this case, and pursuant to Rule 45(c)(3)(A)(iii). The court will, however, review the document listed above *in camera*.

C.  Subpoenas and depositions of former Kos employees

Abbott also seeks a protective order to quash the subpoenas for seven former Kos employees (Messrs. Heatherman, Berg, Tilbury, Shewmake, Penn, Farkas, and King) whom, it argues, have little or no relevant information because they worked on the "managed care" side of Kos's business, while Perius worked on the sales side. (Def.'s Mot. at 10.) Abbott also objects to depositions of Kos's former CEO Adrian Adams and former board members Mike Jaharis, Dan Bell, and Robert Baldini, on the ground that they were high-ranking officials of Kos whose depositions should not be taken unless they possess "unique or superior" knowledge of the facts. (Def.'s Mot. at 10-11.) Perius responds that these persons each have discoverable information. (Pl.'s Resp. Prot. Order at 13-14.)

Abbott has not made a showing that would justify the entry of a blank protective order prohibiting the depositions. The cases Abbott cites in which protective orders were granted to avoid

depositions of high-ranking officials involved situations where the official was remote from the situation at issue. *See, e.g.*, *Patterson v. Avery Dennison Corp.* 281 F.3d 676, 681 (7th Cir. 2002) (corporate vice president and controller of multi-national corporation whose office was 1000 miles from plaintiff's not deposed in plaintiff's Title VII case); *Thomas v. International Business Machines,* 48 F.3d 478, 483 (10th Cir. 1995) (chairman of IBM's board not required to sit for deposition in ADEA case of clerical worker of whom he had no personal knowledge where plaintiff's supervisors were available for deposition); *see also Community Fed. Sav. & Loan Assn. v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.C. Cir. 1983) ("routine pre-trial discovery" does not apply to depositions of government agency board members).

Since the briefing on the motions, the decision-makers have been disclosed and Mr. Adams has been named as a defendant in the Third Amended Complaint, although a motion to dismiss that Complaint is pending. According to Perius, Mr. Adams has been identified as one of the persons who decided to terminate him. If so, he could have relevant personal knowledge.

Accordingly, Abbott's motion for a blanket protective order as to those depositions is denied. This ruling is without prejudice to any further motion that might be raised relating to the circumstances of a particular deposition. Now that Perius has learned the reasons for his termination and who made the decision, the parties are strongly urged to focus and streamline discovery.

D.  Rulings on the scope of questioning

Pursuant to the court's direction [dkt 94], Abbott submitted excerpts from Mr. Niedbalski's deposition for ruling on whether certain questions posed by Perius's counsel are within the scope of the limited protective order. (Def.'s Dep. Tr. References, Exs. B, Niedbalski Dep. and C, Deposition

of Jack Haynes.) The protective order as granted on the record ruled, consistent with this opinion, that Perius's counsel could not take discovery directed to proving "defendant's nationwide non-compliance with the law." (Pl.'s Resp. Dep. Tr., Ex. A, Tr. June 13, 2008 at 23.) Perius's counsel was permitted to question Mr. Niedbalski about Perius and whatever Mr. Niedbalski knows about Perius, but were instructed not to get into a trial of whether Kos had illegal marketing practices. (*Id*. at 22, 25.)

Mr. Niedbalski apparently asserted his Fifth Amendment privilege and declined to answer most of the questions posed to him. But at various points in his deposition, Abbott's counsel objected to the questions, and the parties want a ruling on whether those questions are within the scope of relevant discovery in this case for guidance in future depositions. Perius's counsel argues that their questions were appropriate. (Pl.'s Resp. Dep. Tr. at 1-2.)

Mr. Niedbalski is not a good template for the other depositions, because his direct involvement with Perius and with the claimed reason for Perius's termination opens lines of questioning that are not likely to be repeated with other witnesses. Thus, because the issue is moot as to Mr. Niedbalski's deposition (unless he agrees at a later time to answer questions), the court declines to render an advisory ruling on each of the objections posed at his deposition. As to the objections at Jack Haynes's deposition, Mr. Haynes answered over Abbott's counsel's objection. (*See, e.g.,* Haynes's Dep. at 134.) Perius's counsel is instructed, however, that simply prefacing general questions about violations of marketing practices with the phrase "in Greg Perius's district or region" does not save the question. (*See* Niedbalski Dep. at 171, lines 16-19; Haynes's Dep. at 138, lines 8-9.)

## CONCLUSION

As set out above, except to the extent that Plaintiff's Renewed Motion to Compel was granted by the June 13, 2008 order, that motion is denied and Defendant's Motion for Protective Order is granted. The denial of Plaintiff's motion is without prejudice to Plaintiff's serving further, narrower discovery requests consistent with this opinion. This ruling does not expand the number of interrogatories any party may serve; any request for leave to serve additional interrogatories must first be the subject of discussion among counsel, and then, if necessary, the subject of a motion. Defendant's Motion to Quash or Modify Subpoena is granted in part and reserved in part, pending the court's review of the documents to be delivered for *in camera* inspection within three business days of this order. The parties are strongly urged, with the guidance of this opinion, to focus their efforts to conclude discovery within the time provided by the District Judge, and to address any further discovery disputes without the voluminous and redundant briefing that accompanied these motions.

**IT IS SO ORDERED**.

_____
Geraldine Soat Brown
United States Magistrate Judge

August 20, 2008